IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHYSICIANS OF WINTER HAVEN LLC, dba DAY SURGERY CENTER, on behalf of itself and all others similarly situated, | ) ) ) ) | CASE NO. 1:10 CV 264 |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| Plaintiff, | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| STERIS CORPORATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

## Introduction

Before me by referral[1] in this class action[2] involving the SS1 medical sterilization device manufactured by defendant Steris Corporation (Steris) is a motion[3] by class counsel under Federal Rule of Civil Procedure 23(h) seeking an award of $2 million for attorneys' fees and reimbursement of expenses, together with approval of a $15,000 incentive award payment to plaintiff Physicians of Winter Haven LLC, d/b/a Day Surgery Center (Winter Haven).  Under terms of the settlement agreement approved in this case,[4] defendant Steris does not here oppose the motion for an award of attorneys' fees and the reimbursement of

---

[1] ECF # 32.

[2] ECF # 1.

[3] ECF # 30.

[4] *See*, ECF # 33 (approving settlement agreement – ECF # 26, Ex. A).

expenses,[5] or for the payment of an incentive award.[6]  For the reasons that follow, I will recommend (1) approving the payment of an incentive award in the amount of $15,000 to Winter Haven, (2) awarding class counsel the amount of $2 million for its reasonable attorneys' fees, and (3) denying the motion insofar as it seeks reimbursement of costs and expenses.

## Facts

As noted, this matter was resolved by a settlement agreement and so a lengthy recitation of the facts underlying the suit is not necessary.  For purposes of situating this motion for fees and costs within the context of the entire matter, however, a very brief chronology of events in the suit is in order.

### A.    The suit

This case was filed in February, 2010, shortly after the FDA issued a letter recommending that users of the SS1 device transition to other devices.[7]  Steris moved to dismiss on various grounds[8] but, before this Court could rule on that motion, the matter was

---

[5] ECF # 26, Ex. A (settlement agreement) at Section 8.1.

[6] *Id*. at 8.2.

[7] ECF # 1.

[8] ECF # 10.

stayed[9] and then the motion withdrawn[10] so that the parties could discuss a settlement.  Those discussions resulted several months later in a motion for provisional class certification and preliminary approval of a settlement agreement.[11]  That motion was approved by the Court in March, 2011.[12]  The current motion was filed in April, 2011.[13]

**B.      The motion for fees, costs, and an incentive award**

As noted, class counsel (consisting of Thomas Muzilla of Cleveland, and the firm of Chimicles & Tikellis of Haverford, Pennsylvania) here move for  a total award of $2 million dollars of attorneys' fees and recovery of expenses, and for the award of $15,000 to plaintiff Physicians Insurance of Winter Haven LLC, d/b/a Day Surgery Center, as an incentive.[14]  In the supporting material, Muzilla list attorneys' fees for himself and another attorney totaling $45,065.50,[15] while the total fees set forth by the Chimicles firm for all attorneys and law clerks total $630,016.25.[16]  Moreover, Muzilla seeks reimbursement for $394.40 in costs and

---

[9] *See*, ECF # 17.

[10] ECF # 18.

[11] ECF # 26.

[12] ECF # 29.

[13] ECF # 30.

[14] ECF # 30.

[15] ECF # 30, attachment to Muzilla declaration.

[16] ECF # 30, attachment to declaration of Joseph G Sauder.

expenses,[17] while the Chimicles firm seeks recovery of $13,602.93.[18]  In sum, while seeking $2 million for fees and expenses, class counsel collectively list $675,081.75 in attorneys' fees and $13,997.33 in expenses.

In addition, class counsel here further seek the payment of a $15,000 incentive award to Winter Haven, which would be payable in addition to any recovery due Winter Haven as a class member.  As a basis for this award, class counsel's brief states that Winter Haven was the "catalyst" for the present litigation by identifying concerns with the SS1 device and, further, actively participated in the litigation and settlement process.[19]  Counsel also maintains that an incentive award of $15,000 is "well within the range" of similar awards that have been approved by district courts within the Sixth Circuit.[20]

## Analysis

**A.      Standard of review – attorney fees**

*1.      Rule 23(h)*

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  In this regard, while the above-cited rule

---

[17] ECF # 30, attachment to Muzilla declaration.

[18] ECF # 30, attachment to Sauder declaration.

[19] ECF # 30 at 24.

[20] *Id*.

authorizes the award of attorney's fees in a certified class action, agreement of the parties is not sufficient in itself to enter an award.  Rather, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."[21]

## 2.    *Standard of review of fee determination*

Initially, as noted by Judge O'Malley in her extensive opinion on this issue in *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*,[22] an award of attorneys' fees in a class action under Rule 23(h) is an equitable exception to the American Rule that customarily precludes the prevailing litigant from collecting attorneys' fees from the loser.[23] This exception obtains in two related, but distinct types of fee award applications in class action settlements:  first, in circumstances where the plaintiff's successful litigation has conferred a substantial benefit on the members of a class by creating a fund shared by such members, reasonable attorneys' fees are permitted to be assessed against the fund as a whole;[24] second, in the slightly different context, such as here, where a separate fee

---

[21] *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820-21 (3d Cir. 1995) ("a thorough judicial review of fee applications is required in all class action settlements"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 786 (N.D. Ohio 2010) ("Courts are charged with carefully assessing the scope and size of any fee award [in class action cases] ....").

[22]  *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907 (N.D. Ohio 2003).

[23] *Id.* at 921.

[24] *Id.* (citations omitted).

arrangement is negotiated by the parties apart from the class benefit fund, reasonable attorneys' fees may also be approved by the court as part of a two-pronged analysis of the overall reasonableness of the settlement agreement.[25]

That said, the independent review by the court of fee applications in class action cases has two purposes: first, to protect class members' interests; and second, "to ensure 'that counsel is fairly compensated for the amount of work done as well as for results achieved.'"[26] To that end, because of the unique characteristics of class actions, both in general and on a case-by-case basis, district courts are afforded broad discretion to determine an award of attorneys' fees.[27]  As the Sixth Circuit stated in *In re Sulzer Orthopedics*:[28]  "It is within the [district] court's discretion to set the amount of attorneys' fees so that they are reasonable, and the [appellate court] reviews such an award only for abuse of discretion."

As was noted by Judge O'Malley in the more recent attorneys' fees case of *Lonardo*, courts usually employ one of two methods in analyzing requests for attorneys' fees in class

---

[25] *Lonardo*, 706 F. Supp. 2d at 786.  Judge O'Malley again has an extensive treatment of attorneys' fees in class action cases, and here specifically found "no legal authority" for different treatment of an application for attorneys' fees where the fees would be payable independently from the settlement's common fund and one payable directly from such a common fund.  In both instances, the district court's independent review of the reasonableness of any fee request protects against any collusion between the parties which potentially could reserve for attorneys' fees some portion of the total amount that might otherwise have been available for the common fund settlement.

[26] *Id.* at 788 (quoting *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993).

[27] *Id.* (citations omitted).

[28] *In re Sulzer Orthopedics*, 398 F.3d 778 (6th Cir. 2005).

actions – the "lodestar" analysis or a "percentage of the fund" analysis.[29]  As will be discussed more completely below, to determine the lodestar amount, the court "multiplies the proven number of hours reasonably expended on the litigation by a reasonable hourly rate."[30]  This lodestar figure may then be adjusted up or down to account for various case-specific circumstances.[31]  By contrast, under the percentage of the fund method, "'the court simply determines a percentage of the settlement to award the class counsel.'"[32]

Moreover, the court may employ both methods so that one approach serves as a cross-check on the other thereby resulting in a more accurate and well-reasoned result.[33] Although employment of both methodologies requires greater judicial time and effort, in some cases requiring a more thorough analysis, considerations of judicial efficiency should not outweigh the need to justly determine reasonable attorneys' fees.[34]

With that in mind, the Sixth Circuit teaches that, in general, "the lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved."[35]  Because of the "unique characteristics" of class

---

[29] *Lonardo*, 706 F. Supp. 2d at 788 (citations omitted).

[30] *Id*. (citations omitted).

[31] *Id.*

[32] *Id.* (quoting *In re Sulzer*, 268 F. Supp. 2d at 922).

[33] *Id.* at 791-92 (citation omitted).

[34] *Id.* (citation omitted).

[35] *Rawlings*, 9 F.3d at 516.

actions in general, and the "unique circumstances" of individual cases, the Sixth Circuit also teaches that "it is necessary "that district courts be permitted to select the more appropriate method [as between the lodestar and a percentage of the fund] for calculating attorney's fees" in the particular case at bar.[36]  But, notwithstanding such discretion, the percentage of the fund approach is the preferred method in cases where the attorneys' fees are to be paid directly from the common fund, while, in cases such as this one in which the settlement agreement provides that attorneys' fees are to be paid independently of the common fund, case authority is unclear if there is a preferred method for evaluating requests for attorneys' fees.[37]

Therefore, in sum, in this case the district court retains the discretion to employ either or both methods set forth above, based on its determination of the given method's applicability to the case at bar.[38]  Moreover, although the percentage of the fund approach is not necessarily the clearly preferred approach in this case, it is the easiest approach and is consistent with the Manual for Complex Litigation under the facts of the settlement.  Further,

---

[36] *Id.*

[37] *Lonardo*, 706 F. Supp. 2d at 789-92 (discussing recent cases from the Second Circuit that appear to favor percentage of the fund analysis where attorneys' fees are to be paid independently of the fund).  Even though *Lonardo* did not find that there was "a trend" toward favoring the percentage of the fund approach in cases such as this one, it acknowledged, as the Manual for Complex Litigation stated at § 21.71, that it is easier to employ the percentage approach where all class members received a cash benefit, but more complicated where class members also received non-monetary or delayed benefits.  In such instances, the judge must determine a cash value of those benefits in order to accurately employ a percentage of the fund approach.  *Lonardo*, 706 F. Supp. 2d at 792 n.23.

[38] *Id.* at 792.

the best approach would be to employ both the lodestar and percentage of the fund methodologies so as to cross-check the results obtained by each and thereby ensure a more accurate and well-reasoned award.

Under either methodology, "[t]he party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed."[39]  Further, no matter what method is employed, the district court must provide its reasons for "'adopting a particular methodology and the factors considered in arriving at the fee.'"[40]  In the end, the award must be "reasonable under the circumstances."[41]

## B.    Standard of review – costs

Rule 54(d) of the Federal Rules of Civil Procedure authorizes the recovery of costs. But, consistent with the Supreme Court's holding in *Crawford Fitting*,[42] costs recoverable under Rule 54(d) are generally limited to those listed in 28 U.S.C. § 1920.  Specifically, 28 U.S.C. § 1920 permits the recovery of the following costs:

> (1) fees of the court and marshal; (2) fees of the court reporter for all and any part of the stenographic transcription necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; and (6) compensation of court

---

[39] *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[40] *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings*, 9 F.3d at 516).

[41] *Rawlings*, 9 F.3d at 516.

[42] *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).

appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828 of this title.

As to taxing of any costs permitted by this statute, Federal Rule of Civil Procedure 54(d) provides that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  The Sixth Circuit has held that this provision "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court."[43]  Thus, the district court "has broad discretion in allowing or disallowing the particular items listed in § 1920 as costs."[44]

In the specific instance of photocopies, in this District it has been held that "[t]he cost of photcopying documents necessarily obtained for use in a case are taxable under § 1920(4)."[45]  The actual award must be restricted to those photocopies that were reasonable and necessary.[46]  Photocopy expenses are reasonable and necessary to the extent that the copies were "'used as court exhibits or were furnished to the Court or the opposing counsel.'"[47]  Thus, so-called "convenience copies" or extra copies for use of the party

---

[43] *White & White v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986).

[44] *BDT Prods. v. Lexmark Int'l*, 405 F.3d 415, 419 (6th Cir. 2005).

[45] *Wilhelm v. CSX Transp.*, No.5:00-cv-7099, 2005 WL 361482, at *1 (N.D. Ohio Feb. 14, 2005).

[46] *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 684 F. Supp. 953, 961 (N.D. Ohio 1988).

[47] *Id.*, quoting *Beech Cinema v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1998 (S.D.N.Y. 1979).

seeking recovery of costs are ordinarily not recoverable.[48]  Similarly, where, as here, the court mandates the use of electronic filing, costs for copying of documents required by the court to be filed electronically will not be allowed.[49]

In addition, circuits are split as to whether separately billed costs for computer research may be recoverable.[50] Although the Sixth Circuit has not addressed the question, a recent district court opinion in the Eastern District of Kentucky observes that the "growing consensus of the circuit courts" is to allow such costs to be recovered if counsel seeking the payment of costs customarily bills its clients separately for such research, rather than including it within its hourly rate.[51]

By contrast, although recovery of travel and lodging costs might conceivably be recoverable if such costs would otherwise have been charged to a fee-paying client in the

---

[48] *Whirlpool Corp. v. LG Electronics*, No. 1:04-cv-100, 2007 WL 2462659, at *1 (W.D. Mich. Aug. 26, 2007).

[49] *See*, N.D. Ohio L.R. 5.1.

[50] *American Canoe Ass'n v. City of Louisa*, 683 F. Supp. 2d 480, 500-01 (E.D. Ky. 2010).

[51] *Id.* (citing cases); *see also*, *Citizens Against Pollution v. Ohio Power Co.*, 484 F. Supp. 2d 800, 815 (S.D. Ohio 2007) (reasonable to allow as costs those expenses normally charged separately to a fee-paying client in the course of providing legal services; any other expenses are considered incidental and necessary to providing effective and competent representation and so would be recovered as part of an award of attorneys' fees).

regular course of providing legal services, they are not recoverable by out-of-forum counsel absent a prior finding that it was necessary to retain out-of-forum counsel at all.[52]

## C.    Incentive award

As observed in *Lonardo*, the Sixth Circuit holds that incentive awards to class representatives may be appropriate in some cases, but has not precisely defined the circumstances justifying incentive awards.[53]  Courts within this district, however, have recognized that in common fund cases, and where the settlement agreement provides for incentive awards, "class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled by virtue of class membership alone."[54]

In addition to such a request being made by class counsel, the better procedure is for a class representative seeking such an incentive award to also provides an affidavit describing his participation in the case, which may then be confirmed by the court's own recollection of the party's contribution to the litigation.[55]

---

[52] *American Canoe*, 683 F. Supp. 2d at 500. "[I]t is not logical to award out of town travel expenses after determining that [plaintiff's] choice of [out-of-forum] counsel was unreasonable."

[53] *Lonardo*, 706 F. Supp. 2d at 787 (citing *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003)).

[54] *Id*.

[55] *Id*.

**D.      Application of standards to claims**

*1.      The lodestar analysis*

The current record simply does not permit any meaningful review of class counsel's attorneys' fees claims under the lodestar analysis.  This is true for multiple reasons, as detailed below.

First, because there is no record at all of the time spent by defense counsel, there is no way of comparing those hours with the hours spent by class counsel as a way to gauge their reasonableness.

Next, in addressing the second component of the lodestar calculation, hourly rate, I note first that it is important to remember that in assessing a fee request from counsel from outside of Cleveland, the forum of this Court, this Court must first determine whether it was reasonable in the first instance to retain out-of-forum counsel and only then determine if the fee claimed by such counsel is reasonable for an attorney of counsel's skill, experience, and reputation.  Specifically, in those cases seeking attorney's fees for counsel from outside the "venue of the court of record," courts must follow a two-step process:  (1) determining whether hiring out of town attorneys was reasonable in the first instance; and (2) determining whether the rates sought by the out of town counsel are reasonable for an attorney of his or her degree of skill, experience and reputation.[56]

---

[56] *Hadix v. Johnson*, 65 F.3d 532, 534 (6th Cir. 1995).

Here, neither Winter Haven nor class counsel have supplied any such declaration that no attorney in Cleveland had the resources, expertise, or willingness to take this class action, making it necessary to retain out-of-forum counsel.

Thus, with no basis for concluding that out-of-forum counsel was needed here, there is also, then, no basis for considering what the reasonable hourly rate should be for the out-of-forum counsel in this case.[57]  In that regard, I note that out-of-forum counsel Chimicles has requested fees at the hourly rate of $850.00 per hour, out-of-forum counsel Sauder seeks fees at an hourly rate of $600 per hour, out-of-forum counsel Geyelin at $460 per hour and out-of-forum counsel Johns at $350 per hour.[58]  In addition, out-of-forum counsel seeks $300 per hour for time of a legal assistant and for the time of unnamed attorneys and law clerks who spent less than 20 hours on this case.[59]  As noted, there is no basis whatsoever in the current record for undertaking any meaningful review of these claimed hourly rates.

---

[57] The Sixth Circuit's action *In re Sulzer* does not provide an alternative for class counsel here to recover fees based solely on its claimed hourly rates.  As discussed, *In re Sulzer* involved a class action with both a common benefit fund for the class members and a separate attorneys' fees fund.  *In re Sulzer*, 398 F.3d at 779.  Faced with 57 attorneys from a variety of forums all claiming fees computed at different hourly rates that might be appropriate to the various locations, District Judge O'Malley, for purposes of managing this process, in her discretion elected to "equalize" the hourly rates for all attorneys with similar years of experience by creating what amounted to a blended hourly rate for all similarly situated attorneys in that case.  *Id*. at 780.

[58] ECF # 30-2 at 9.

[59] *Id*.

-14-

Further, as Judge O'Malley stated in *In re Sulzer*, in addition to requiring evidence for the use of out-of-forum counsel, and for the hourly rates employed, a court must examine the following questions about the individual time claims before approving any attorneys' fees request as reasonable:

1.  whether the particular attorney's time was spent advancing the interests of the entire class, and not spent primarily for the benefit of one plaintiff;[60] and,

2.  how much of the particular attorneys' time was spent "in review" of the work of another attorney;[61]

3.  did the attorney document his claimed time properly;[62]

4.  how much would the attorney receive from other sources for his work on this case;[63]

5.  whether the attorney submitted truthful claims, supported by sworn statements;[64] and

6.  whether the claimed fees were reasonable in light of the total settlement.[65] It is only in light of this final factor and in cases where the fees are to be paid from the common benefit fund that the court

---

[60] *In re Sulzer*, 268 F. Supp. 2d at 924-25.

[61] *Id*. at 925.

[62] *Id*. at 926.

[63] *Id*. at 927.

[64] *Id*.

[65] *Id*. at 928-30.

-15-

considers whether the fees are reasonable in view of the factors listed in *Ramey v. Cincinnati Enquirer*.[66]

In sum, where Judge O'Malley in *In re Sulzer* was able to base an adjudication of the question of the appropriate lodestar on facts developed after spending "a significant amount of time reviewing in detail" information supplied by class counsel that "fill[ed] about seven banker's boxes,"[67] here, class counsel attempted to meet their burden of justifying claimed fees under the lodestar approach with only sketchy, rudimentary summaries that provided no reviewable level of detail.[68]  As such, the present record cannot provide the basis for calculating an attorney's fees award under the lodestar methodology in this case.

Accordingly, the only method of reviewing the claimed attorneys' fees is by reference to their percentage of the common benefit award.  In so doing, the decision on methodology is committed to the discretion of the district court, and that (arguably) this method is to be preferred in cases such as this one.  The better course – using both methods so that one cross-checks the other – is not available here because class counsel did not provide the necessary specificity in their claim documentation.

---

[66] *Id.* at 930 (citing *Ramey v. Cincinnati Enquirer*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

[67] *Id.* at 924.

[68] This is true both for the out-of-forum counsel and Thomas A. Muzilla, local counsel.

## 2.      *Percentage of the common benefit fund analysis*

As noted, the essence of a percentage of the fund award of attorneys' fees is to simply ascertain the proposed attorneys' fees as a percentage of the overall common fund provided to class members in the settlement agreement.  But, as in cases such as this one where the attorneys' fees are to be paid from a separate fund, *Lonardo* teaches that the overall settlement amount on which the percentage is to be calculated must include the amount separately set aside for attorneys' fees since "such an independent agreement for the defendant to pay attorneys' fees is a benefit to the class."[69]  In that same regard, to the extent that the settlement agreement provides that administrative costs that could have been borne by either party, or  shared between them, are instead to be borne by other than the plaintiffs, this, too, represents a benefit to the class and must, therefore, be included in the total common benefit amount used to calculate a percentage of the fund award of attorneys' fees.[70]

Once a percentage is calculated, the court will then evaluate it for reasonableness by cross-checking the amount against other awards in comparable cases and by reviewing it under the *Ramey* factors.[71]  If possible, as noted earlier, any final award computed by a percentage of the fund analysis should be additionally cross-checked against an award computed under the lodestar analysis.

---

[69] *Lonardo*, 706 F. Supp. 2d at 803.

[70] *Id*. at 802-03.

[71] *Id*. at 803.

Here, the initial discernment of a percentage of the fund award starts by noting that the common benefit fund amount available to class members is not now precisely knowable. Rather, the settlement agreement provides that three classes of class members with eligible SS1 devices or who have returned such devices may receive either a $1,000 credit toward the purchase of a Steris System 1E device, a lesser valued credit toward the purchase of another Steris product, or a still lesser amount in cash.[72] Moreover, a component of the settlement involves payment by Steris for de-installation and disposal of SS1 devices, as well as for used and open parts and accessories.[73] Thus, depending on the exact dollar value of the precise benefits elected during the notice period by some portion of approximately 6,000 potential class members,[74] class counsel argues that the total available class benefits total approximately $20 million.[75]

It is a matter of unsettled law as to whether a percentage of the fund should be calculated on the amount of available benefits or the amount actually paid.[76] In that regard, however, *Lonardo* observes that the amount available for recovery must have some effect on

---

[72] *See*, ECF # 30 at 8 (outlining relevant parts of settlement agreement).

[73] *Id.* at 15.

[74] The introduction to the brief supporting this motion refers to 6,000 health care "providers" as beneficiaries of this settlement, while later in the brief it notes that there are about 20,000 "eligible... units" to which the settlement applies. *Compare, id.* at 2, 15.

[75] *Id*. at 2.

[76] *Lonardo*, 706 F. Supp. 2d at 798-99.

the fee award since, as the Supreme Court stated in *Boeing Co. v. Van Gemert*,[77] the total amount available to class members represents a benefit to the class even when not all members take advantage of that benefit.  Nonetheless, as was later stated by the Supreme Court in *Waters*,[78] "there must be at least some rational connection between the fee award and the amount of the actual distribution to the class," since to do otherwise risks that "the actual recovery will be misallocated between attorney's fees and the plaintiff's recovery."[79]

Here, the Supreme Court's concern in *International Precious Metals Corporation v. Waters* over a misallocation between the final amount recovered by plaintiffs and the amount of attorneys' fees cannot be independently addressed.  On one hand, as class counsel's brief observes, the members of this class are "highly sophisticated health care providers (such as hospitals and surgery centers)," and the settlement agreement provides that the claims administrator will provide each member with an "individualized notice of the settlement benefits and reminders of how to file their claim form" to obtain benefits.[80]  Thus, class counsel concludes, it "anticipates that there will be an overwhelmingly large participation rate by class members."[81]  Because class counsel provided no independent basis for cross-checking how the $20 million value was computed, there is no way to conclude what

---

[77] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-80 (1980)

[78] *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000).

[79] *Id.*

[80] ECF # 30 at 15-16.

[81] *Id.* at 16.

the benefit fund value should be – even if, as class counsel argues, most class members will claim and receive a benefit.

What can be said, however, is that the class benefit number of $20 million supplied by counsel's estimate does not appear to include the $2 million attorneys' fee amount in the benefit total.  Since, as noted, the attorneys' fee amount is properly included in any figure of the total benefits to the class, as would be the administrative amount (also not being paid by the class, and also, presumably not included in the $20 million figure), these omissions from the given class benefit amount provide additional reasons for accepting the estimated $20 million figure as a reasonable amount to be recognized as the class benefit.

Therefore, after considering the issues raised by *Lonardo* and other relevant factors mentioned above, it is reasonable to value the amount of class benefits at the uncontested figure of $20 million presented by class counsel and to further calculate class counsel's attorneys' fees based on a  percentage of that valuation.

Accordingly, with an overall class benefit of $20 million, the $2 million requested as attorneys' fees by class counsel is 10 percent of that amount.  As such, this figure must be first evaluated under the *Ramey* factors and then cross-checked for reasonableness against other attorneys' fee awards based on a percentage of the fund.[82]

The *Ramey* factors used to evaluate reasonableness are:

1.      the value of the benefits rendered to the class;

---

[82] *Lonardo*, 706 F. Supp. 2d at 803.

-20-

2.      society's stake in rewarding attorney's who produce such benefits in order to maintain an incentive to others;

3.      whether the services were undertaken on a contingent fee basis;

4.      the value of the services on an hourly basis;

5.      the complexity of the litigation; and

6.      the professional skill and standing of all counsel.[83]

In applying the *Ramey* elements, the district court in *In re Sulzer* teaches that the "'[m]ost important of these factors are the value of the benefit rendered to the plaintiff class and the value of counsel's services on an hourly basis.'"[84]

In that regard, as noted, the claimed value of time expended by class counsel is $675,081.75.  But, as is more fully set forth above, this figure could not be deemed a "lodestar" because of deficiencies in the supporting record.

As to the third factor concerning contingent fees, class counsel asserts that they represented the class on a contingent fee basis, and have not received any compensation for their work.[85]

Thus, recognizing that the claimed attorneys' fee number has not been established as a reviewable lodestar amount, the final claimed fee amount constituting approximately seven percent of a $ 20 million benefit fund appears to be reasonable in light of the most crucial of

---

[83] *Ramey*, 508 F.2d at 1196.

[84] *In re Sulzer*, 268 F. Supp. 2d at 930 (quoting *Rawlings*, 9 F.3d at 516).

[85] *See*, ECF # 30 at 18.

-21-

the *Ramey* factors.  A review of evidence in support of the rest of the factors – which evidence was not opposed – does not alter this recommended conclusion.[86]

Therefore, once a *Ramey* review is complete, the fees sought must then be evaluated for reasonableness as against other awards.  Before undertaking this review, I note that in order to raise the claimed hourly fees of approximately $675,000 to the $2 million being sought class counsel seeks to use a "lodestar multiplier" of 2.9.[87]  Class counsel contends that such a multiplier is within the range of multipliers employed in the Sixth Circuit.[88]

In fact, I note that the cases cited by counsel favoring a multiplier all predate the 2010 United States Supreme Court decision in *Perdue v. Kenny A.*[89]  In that case, the Supreme Court held that in fee-shifting civil rights cases arising under 42 U.S.C. § 1988 multipliers are strongly disfavored.  *Perdue* reasoned that because the lodestar amount includes nearly all the factors constituting a reasonable attorney fee, there is a strong presumption that the lodestar figure of itself is the reasonable amount for an attorneys' fee award.[90]  On the basis

---

[86] *See*, *id.* at 15-23.

[87] *Id*. at 19-20.

[88] *Id.* at 20.

[89] *Perdue v.Kenny A*., __ U.S. __, 130 S. Ct. 1662 (2010).

[90] *Id.* at 1662.

of *Perdue*, judges in this District in class action cases have concluded that multipliers should not be applied to the lodestar except in "rare" and "unusual" cases.[91]

Accordingly, because this does not appear to be a rare or unusual case as might justify multipliers being applied,[92] based on *Perdue* and its application by other judges in this District to similar situations, no multiplier should be used in this matter.  Therefore, if there is no applicable multiplier and the record here does not permit the calculation of a reviewable lodestar amount, the final evaluation for reasonableness is on class counsel's request for $2 million in fees and costs supported only as a percentage of the $20 million fund.

That said, then, the final review here is whether that $2 million claim is reasonable on this record.  In *Lonardo* a fee award of 26.4 percent of the benefit fund was found reasonable and "well within the acceptable range for a fee award" in a class action where the award is computed on the basis of a percentage of the fund.[93]  Thus, a ten percent award here is demonstrably also "well within" the range of acceptable fee awards.  Such an award was agreed to by the parties as part of the settlement agreement.

---

[91] *Lonardo*, 706 F. Supp. 2d at 816 (O'Malley, J.) (concerning lodestar for objector); *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 2010 WL 1751995, at *5 (N.D. Ohio April 30, 2010) (Gwin, J.), *aff'd*, 436 F. App'x 496 (6th Cir. 2011).

[92] As noted, the matter here progressed to settlement discussions within several months of filing and settled within six months after such discussions commenced – all after the FDA had already directed that the SS1 device be replaced and all with only a single (ultimately withdrawn) motion to dismiss filed in opposition to the claim.

[93] *Lonardo*, 706 F. Supp. 2d at 803.

Thus, I recommend finding that an attorneys' fee award of $2 million is reasonable under the *Ramey* factors as a percentage of the benefit fund.

*3*.     *Costs*

As noted earlier, costs may be recovered here only to the extent those costs are permitted.  Moreover, it is within the court's prerogative as to whether to award costs.[94] Indeed, the court in *Lonardo* did not award fees to class counsel.[95]

Here, because there was no evidence supporting the need for out-of-forum counsel, there is then no justification for payment of travel and lodging expenses.  Such expenses total $9,994.11 of the $13,602.93 in expenses claimed by the Chimicles firm.[96]  Further, claimed fees for photocopying in districts, such as this one, where filing is electronic are not recoverable unless the copies were necessary for use by the court or furnished to opposing counsel. Here, there was no detail given as to what portion of the claimed $1,212.75 in photocopying expenses were recoverable under the rubric.  Similarly, as discussed above, since computer research charges are recoverable only to the degree it can be shown that such charges are customarily billed separately to clients by the firm claiming the charge, the failure of the Chimicles firm to provide such evidence renders this $1,871.25 item not recoverable.

---

[94] *Id*. at 816.

[95] *Id.*

[96] ECF # 30-2 at 11.

-24-

The elimination of these items from those costs for which recovery is sought leaves less than $1,000 of other listed costs for all class counsel.  In this situation, and where the recommended attorneys' fees are significantly above the claimed hourly charges and vastly more than the remaining reimbursement claims, I recommend denying all reimbursements for costs and expenses.

### 4.     *Incentive Award*

Inasmuch as the unrefuted claims before the Court establish that Winter Haven was the "catalyst" for the present suit and actively participated in its prosecution, and since the payment of an incentive award to Winter Haven is contemplated in the settlement agreement and is otherwise within the scope of such an award under the prevailing law as set forth earlier, I recommend payment of an incentive award of $15,000 to Winter Haven as provided in the settlement agreement.

## Conclusion

For the foregoing reasons, I recommend granting the motion as is more fully discussed above.

Dated:  February 6, 2012                              s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.